## Commonwealth v. King

*Kenneth A. Weiss,* for Commonwealth.
*Daniel McGee,* for defendant.

BROWN, JR., *P.J.,* October 12, 1983—

## FACTUAL BACKGROUND

This matter comes before the court upon defendant's motion to suppress. The incident involved in this case occurred when defendant Gary Allen King returned to Centre County Prison from a furlough. His furlough agreement stated that defendant would voluntarily submit to a urinalysis and a breathalyzer test upon reentry into the Centre County Prison.

When defendant returned to the prison on May 1, 1983, he was subjected to a strip search. During the search, Lt. John Owens noticed that as defendant removed his clothing, he took something from his jacket and tried to hide it in his hand. Lt. Owens grabbed for what defendant was hiding and as he did so, defendant placed it in his mouth and swallowed it. Lt. Owens instructed two other prison officers to transport defendant to Centre Community Hospital for testing. Until defendant was transported, he was placed in an isolation cell at the prison.

Dr. John R. Paine testified that he attended to defendant at the hospital. He asked defendant what the bag contained. Defendant told him the bag contained a small amount of methamphetamine.

After learning the contents of the bag, and after observing defendant's slightly elevated temperature and blood pressure, Dr. Paine ordered that an emetic be administered to defendant to induce vomiting. Dr. Paine testified he was concerned about defendant's health. If the bag were to rupture, the resulting overdose could likely be fatal. He also stated that the ingestion of a "street" drug leads to medically unpredictable results because the physician cannot accurately predict its strength or purity.

Defendant testified that he never consented to the emetic and was not aware of why he was asked to consume an amber liquid (the emetic) and several glasses of water. He assumed it was part of the "tracking process involved in urinalysis," to which he had expressly consented. He further testified he was not told what an emetic was and that he swallowed the liquid prior to being examined by Dr. Paine.

Defendant contends that placing him in an isolation cell and detaining him there until being transported to the hospital was an illegal seizure. Defendant also contends that the seizure of the packet without a warrant violated his Fourth Amendment rights.

## DISCUSSION

This court is unable to find Pennsylvania precedent involving facts even remotely similar to the instant case. Nonetheless, the disposition of defendant's motion is not difficult. This is not a case of governmental intrusion. The prison officials did not ask the hospital to administer an emetic. Although they indicated to the nurse at the receiving desk that defendant had swallowed something, they also indicated that he was at the hospital for a urinalysis and blood test (to which defendant did not consent).

Dr. Paine did not intend to conduct any sort of search or seizure, but acted to protect the health and well-being of defendant. An intrusion into the body of a suspect, if conducted by medical personnel in a medical environment and according to accepted medical practices, will not in itself constitute an unreasonable search or seizure. If the medical personnel acted in good faith to protect the health of the suspect, no violation of constitutional rights has occurred. See W. LaFave, "Search and Seizure," section 5.3 (1978). Thus, Dr. Paine properly administered the emetic to defendant.

Defendant's contention that his detention in an isolation cell until transport was an illegal seizure is without merit. Even if his detention were illegal, the events that occurred at the hospital do not fall within the rule of law established in Wong Sun v. United States, 371, U.S. 471 (1963). The prison officers did not ask for an emetic to be administered. Additionally, defendant was aware that he had been transported to the hospital because Lt. Owens had observed him swallowing something. He voluntarily signed a general consent form for treatment. Dr. Paine acted independently from any government official, and in good faith. Given these circumstances, employees of the hospital gave defendant, at a minimum, constructive notice that he was to have the contents of his stomach removed from his body in some fashion. He cooperated; his actions constituted an independent and intervening act of free will.

Thus, this court holds that Dr. Paine properly administered the emetic to defendant as a result of his independent medical judgment and after adequate disclosure to defendant of intended treatment. Defendant's motion to suppress is denied.

## ORDER

And now, this October 12, 1983, defendant's motion to suppress is hereby denied. The Commonwealth may introduce into evidence at the trial of this case the contents of the bag recovered from the stomach of defendant and the chemical analysis of those contents.